# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

SILVIA M. O'HARO      :
      Plaintiff,      :
                   :    Case No. 18:CV-2073
v.                  :
                   :
HARRISBURG AREA     :
COMMUNITY COLLEGE,  :
      Defendant.     :

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS and PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

AND NOW, this 8th day of December, 2019, comes the Plaintiff, Silvia O'Haro, by her counsel, Sara A. Austin, Esq., **Austin Law Firm LLC**, and does file this Response to the Defendant's Statement of Undisputed Material Facts (hereafter "Defendant's SMF") and her own Statement of Undisputed Material Facts (hereafter "Plaintiff's SMF"), both in opposition to the Defendant's Motion for Summary Judgment:

### PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

15.    The cited procedure does not mandate removal from the program upon the second failed course; rather, it talks solely about readmission.

21.    This statement is unsupported by the record (other than LaRue's affidavit, which was not subject to cross-examination and made after the fact).

1

39, 40, 43.   Ms. Lott did meet with Ms. O'Haro, but she did not explain the new curriculum or grading system that would be effective in Spring 2015. She also did not advise Ms. O'Haro of the option to transfer to HACC's Harrisburg campus to re-take N206 (*See*, Exhibit 3 to Defendant's SMF, p. 124; Exhibit 16 to Defendant's SMF, pp. 81-83.)

50.   However, the Caucasian students were given access to their tests and allowed to write down questions so that they could appeal (which one did and thereafter she received additional points on her final and graduated). Exhibit 9 to Defendant's SMF, pp.134-140.

51.   Ms. O'Haro did not file an appeal from her failing grade in N206 in Fall 2014 as she thought she needed verbatim test questions and was not permitted to obtain same. (*See*, Exhibit 9 to Defendant's SMF, pp. 113-114.)

52.   While Ms. Lott and LaRue met with Ms. O'Haro, neither explained to her the new curriculum or grading system to go into effect in Spring 2015. They also did not advise Ms. O'Haro of the option to transfer to HACC's Harrisburg campus to re-take N206 (*See*, Exhibit 3 to Defendant's SMF, p. 124; Exhibit 16 to Defendant's SMF, pp. 81-83.).

53.   Ms. O'Haro felt she had no choice but to enroll in N250 for Spring 2015 based on having no other viable option presented to her. *See,* Exhibit 9 to Defendant's SMF, pp. 142-143.

55.     There is no place in the Request for Readmission form for a complaint about discrimination. *See*, Exhibit 17 to Defendant's SMF.

64, 65, 68, 69, 70, 74.     O'Haro's account of what happened differs. On February 12, 2015, the issues involved administering Cozaar PO to a patient and reconstituting a medicine. LaRue was the clinical instructor. O'Haro was removing an NG tube and had to administer the medication. She told the patient it would be an oral medication. She then left the room, which was when LaRue asked her about the medication. O'Haro paused, so LaRue told her to go look it up. At no point did O'Haro tell the patient or LaRue that the mediation was for potassium or that it would be administered in the abdomen. Exhibit 9 to Defendant's SMF, pp. 157-162.

82, 86.     no (and at no point prior to responding to Ms. O'Haro's appeal was there any mention of Ms. O'Haro allegedly suggesting adding more saline to the reconstituted medication. Exhibit 9 to Defendant's SMF, pp. 152-156.

90.     O'Haro responded "ok" because she thought the patient was refusing the medication, which is a patient's right. Exhibit 9 to Defendant's SMF, p.164; Exhibit 2 to Defendant's SMF, p.150

94.     The patient also refused to permit LaRue to administer the medication and LaRue is a long-time licensed nurse. Exhibit 2 to Defendant's SMF, p.158.

100.   Ms. O'Haro was unfamiliar with the patient's prior blood pressure readings until she reviewed the history. Exhibit 9 to Defendant's SMF, p.185

123.   Normally, but not always; on the last day of clinical in Fall 2014, the Nursing Faculty permitted a Caucasian senior student to remediate a "not met" in the lab and then to progress to the Spring 2015 semester without having re-performed the skill in the clinical setting. Exhibit 3 to Defendant's SMF, pp. 115, 117; Exhibit 9 to Defendant's SMF, p.266; Exhibit "E" to Plaintiff's Brief in Opposition, pp. 65-66.

125-128.   Since the Nursing Faculty permitted a Caucasian senior student to remediate a "not met" on the last day of Fall 2014 clinical in the lab and then to progress to the Spring 2015 semester without having re-performed the skill in the clinical setting, O'Haro's "not met" should have been dealt with the same way.

130.   Ms. O'Haro signed the Action Plan presented to her because she thought she had no other option (especially considering the Faculty's discriminatory treatment of her). Exhibit 9 to Defendant's SMF, p.207 and response to paragraphs 125-128 above.

139, 142, 144.   O'Haro thought Lindstrom's question were hypothetical since O'Haro had not seen a diabetic patient, so she answered in general, broad terms. Exhibit 9 to Defendant's SMF, pp. 215-220.

150.   O'Haro does not remember Lindstrom offering the class access to a computer for students to look up medicines. Exhibit 9 to Defendant's SMF, p.233.

154, 162.   Administration of (a bolus dose of) medication through an IV push was new to Ms. O'Haro, having never been taught about it or trained on how to do it. *See*, Exhibit "B" to Plaintiff's Brief in Opposition.

164, 167.   After O'Haro told the patient she needed to give her medicine, the patient pulled up her gown, so O'Haro momentarily stopped. Exhibit 9 to Defendant's SMF, pp. 228, 229

170.   O'Haro did indeed go back to the patient. However, at no point did O'Haro ask the patient to lift her gown to expose her abdomen; the patient did that by herself. Id.

171.   Lindstrom just may not have heard O'Haro tell the patient how the medication would be administered. Exhibit 22 to Defendant's SMF, pp. 72-73.

172, 173.   O'Haro intended to properly administer the medication. Further, Lindstrom testified that she may not have heard O'Haro tell the patient how the medication would be administered. Exhibit 22 to Defendant's SMF, pp. 72-73.

175.   O'Haro did indeed know the proper route to administer the medication; it was the patient who was apparently confused and lifted her gown without being asked to do so. Lindstrom even testified that she may not have heard

O'Haro tell the patient how the medication would be administered. Exhibit 22 to Defendant's SMF, pp. 72-73.

181, 182, 183.    Since O'Haro was treated differently than Caucasian, non-Jamaican students and not permitted to remediate her clinical "not met" in the lab, then she should have been given a "D" in N206 in Spring 2015.

184.   Pursuant to the Spring 2015 N250 Course Syllabus, O'Haro should have been given a "D" (*See*, Exhibit "G" to Plaintiff's Brief in Opposition); had her scores in N243 (which she was taking concurrently with N250 and in which she was doing well at the time she was involuntarily removed from the program) and N251 been high enough, she would have had a high enough GPA to graduate.

191.   O'Haro has not attempted to enroll in the LPN program due to financial considerations. *See*, Exhibit 9 to Defendant's SMF, p.46

203.   However, the Procedure provided for by the Handbook is not uniformly followed as evidenced by a Caucasian senior nursing student who received a NM on the last day of clinical in Fall 2014 and was permitted to remediate in the lab without re-performing the skill in the clinical setting. *See*, Exhibit 3 to Defendant's SMF, pp. 115, 117; Exhibit 9 to Defendant's SMF, p.266; Exhibit "E" to Plaintiff's Brief in Opposition at pp.65-66.

208.   Lott testified that K.E. (a Caucasian) did not re-perform the skill in the clinical setting, and yet K.E. was given a passing grade for the course and

permitted to continue in the nursing program. *See*, Exhibit 16 to Defendant's SMF, pp. 101-103

209.   LaRue, as a clinical instructor, did not give K.E. a NM in Spring 2015 when a patient refused medication because K.E. was "a 4th semester student but not a nurse." Exhibit 2 to Defendant's SMF, p.166.


PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1.   The Fall 2014 Course Syllabus for N206 provides that a NM in the clinical portion is to result in a "D" for the course regardless of the theory grade. See, Exhibit "F" to Plaintiff's Brief in Opposition.

2.   The Spring 2015 Course Syllabus for N250 similarly provided that a NM on any skill at the end of the course or clinical tool is to result in a "D" for the course regardless of the theory grade. See, Exhibit "G" to Plaintiff's Brief in Opposition.

3.   The Defendant would not permit O'haro to continue in N243 in Spring 2015. Exhibit 2 to Defendant's SMF, p.167.

4.   There is nothing permitting the Defendant to withdraw a student from a class they were passing. Exhibit 2 to Defendant's SMF, pp. 168-169

5.   In September 2014, H.R., a Caucasian senior nursing student, was on a medical/clinical rotation with LaRue as instructor. Medication was given to a

patient who heart rate was below guidelines for safe administration. The incident was remediated in the lab. Exhibit 40 to Defendant's SMF, pp. 16-17

6.      During the same clinical rotation in September 2014, E.G. a Caucasian senior student who was at the top of the class, drew up medication in the med room rather than in the patient's room in front of an instructor. This was an unsafe med practice. The student did not receive a "not met".  (Exhibit 40 to Defendant's SMF, p.17; Exhibit 16 to Defendant's SMF, pp. 76-77)

7.      Professors were frustrated with O'haro due to the language barrier. Exhibit 40 to Defendant's SMF, p.62

8.      Arletta Molnar, one of Defendant's instructors, did not do to anyone else some of the things she did to O'haro. Exhibit 41 to Defendant's SMF, pp. 65-66.

9.      There was at least one student who did not complete a clinical skill by the end of the semester, was allowed to remediate in the lab, and received credit for it. Exhibit "E" to Plaintiff's Brief in Opposition at pp. 65-66

10.     K.E. (Caucasian) received a NM on the last day of Fall 2014 clinical and was not required to re-perform the skill in the clinical setting, but only in the lab. Exhibit "D" to Plaintiff's Brief in Opposition at pp. 210-214.

11.     N206 was still being taught at HACC Harrisburg in Spring 2015, but it was difficult if not impossible to transfer there due to it being at/near capacity. Exhibit "A" to Plaintiff's Brief in Opposition, pp. 78-79.

12.     The treatment of O'Haro by some Nursing Faculty may have been based on race or national origin. Exhibit "A" to Plaintiff's Brief in Opposition, p.94.

13.     O'Haro had an 84.4% theory grade in N250 in Spring 2015 going into the final and was also passing the theory potion of N243 at that time. Exhibit "A" p.107; Exhibit 2 to Defendant's SMF, p.99; Exhibit 18 to Defendant's SMF, Request #3, p.5; Exhibit "C" to Plaintiff's Brief in Opposition.

14.     Passing N243 in Spring 2015 would have given O'Haro 2.5 credits toward her degree. Exhibit 2 to Defendant's SMF, p.112

15.     The different objectivity of Nursing Faculty may be due to race or national original discrimination. Exhibit "A" to Plaintiff's Brief in Opposition at pp.138-139.

16.     All the other students mentioned as comparators are Caucasian. Exhibit "A" to Plaintiff's Brief in Opposition, pp.142-143

17.     Despite the Handbook's supposed requirement, two students doing the same thing in the same course in the same semester with different instructors could remediate in different ways; likewise, two students doing the same thing with the

same instructor in different semesters could remediate in different ways. Exhibit 2 to Defendant's SMF, pp. 86-87, 89.

18.     Neither LaRue nor Lott reviewed with O'Haro the effect of the transition from the old curriculum in Fall 2014 to the new curriculum in Spring 2015. Exhibit 3 to Defendant's SMF, p. 124; Exhibit 16 to Defendant's SMF, pp. 81-83.)

19.     On 2/12/19, the patient to be given heparin refused the medicine. Exhibit 2 to Defendant's SMF, pp. 156-157.

20.     despite a policy requiring 2 RNs to verify dosage calculation and the medicine being pulled into the syringe properly, one RN left the room before O'Haro calculated the dosage and pulled the medicine into the syringe. Exhibit 22 to Defendant's SMF, pp. 28-29, 32, 34

21.     Lindstrom did not hear whether O'Haro told the patient the IV push was for heparin, but that would have been correct. Exhibit 22 to Defendant's SMF, pp. 68-69.

22.     LF, a senior student, had a NM on 11/21/14, the last day of clinical for N206, and received a prescription to remediate in the lab. Exhibit 3 to Defendant's SMF, pp. 115, 117

23.     In September 2014, E.G., a Caucasian senior student who was at the top of the class, drew up medication in the med room rather than in the patient's

room in front of an instructor. This was an unsafe med practice. The student did not receive a "not met".  (Exhibit 40 to Defendant's SMF, p.17; Exhibit 16 to Defendant's SMF, pp. 76-77)

24.     During that same clinical rotation in September 2014, K.M., a Caucasian senior student, did not re-check medication changes, such that the medicine was wasted, there was a delay in care, and the 7 rights were not followed. No "not met" was issued. Exhibit 16 to Defendant's SMF, pp. 77-80.

25.     Lott's notes of her 2/26/15 meeting with O'Haro, written at or about the time of the meeting, do not contain mention of O'Haro suggesting adding more saline to the reconstituted medicine. Exhibit 2 to Defendant's SMF, p.111; Exhibit 25 to Defendant's SMF

26.     As part of her investigation of O'Haro's claims of discrimination, Gettysburg Campus Dean of Academic Affairs Dory Uhlman did not contact any student comparator mentioned by O'Haro. Exhibit 30 to Defendant's SMF, p.24

27.     The academic appeal process does not address instructors treating differently students doing the same thing in different semesters. Exhibit 30 to Defendant's SMF, p. 30.

28.     After her investigation, Uhlman passed along for appeal purposes only O'Haro's appeal relative to LaRue (since she prepared the Action Plan for remediation), but the Appeals of Academic Decisions Committee also relied on

11

Lindstrom's response/decision that had been given to Uhlman during her investigation. Exhibit 30 to Defendant's SMF, pp. 33-34

29.     Due to financial reasons and geography, the only nursing program available to O'Haro (other than HACC-Gettysburg form which she had been involuntarily withdrawn) was Hagerstown Community College. Exhibit 9 to Defendant's SMF, p.48

30.     O'Haro could not afford to relocate to enroll in a nursing program other than Hagerstown CC. Exhibit 9 to Defendant's SMF, p.47

31.     O'Haro could not afford to enroll in the Defendant's LPN program after her involuntary removal from the RN program because she would still have to complete the RN program after the LPN program. Exhibit 9 to Defendant's SMF, pp. 52-53

32.     In trying to mitigate her damages, O'Haro obtained her Associates Degree from Hagerstown CC in May 2019 and began looking for jobs using that degree. Exhibit 9 to Defendant's SMF, p.56

33.     When O'Haro told Marilyn Teeter, Lott's predecessor as Director of Nursing, about the race and national origin discrimination, Teeter told O'Haro to just focus on the Fall 2014 N206 final. Exhibit 9 to Defendant's SMF, pp. 62-65

34.     O'Haro had passed all required nursing courses prior to Fall 2014 Nursing 206, the final course before she could graduate. Exhibit 9 to Defendant's SMF, p.80.

35.     After having failed the N206 final in Fall 2014, O'Haro met with Lott and LaRue and understood that she needed verbatim test questions in order to file a grade appeal, but that she would not be given the tests from which to obtain the information for the appeal. Exhibit 9 to Defendant's SMF, pp. 113-114.

36.     O'Haro did not file a grade appeal to her Fall 2014 N206 grade because she did not have the verbatim test questions that she thought were required. Exhibit 9 to Defendant's SMF, pp. 113-114

37.     BM (Italian/Argentinian) and RW (Caucasian) were permitted to see tests; BM was even permitted to write down questions verbatim. Exhibit 9 to Defendant's SMF, pp.134-140.

38.     O'Haro was not told of the option to re-take N206 in Spring 2015 but would have done so had she known. Exhibit 9 to Defendant's SMF, pp. 145-146.

39.     Caucasian students exhibiting the same or substantially similar behaviors on 2/12/15 (KE, KM) were not given NMs. Exhibit 9 to Defendant's SMF, pp. 175-176, 196-199, 279-280, 287-290

40.     Caucasian students exhibiting the same or substantially similar behaviors on 2/13/15 (KE, KM, A_) were not given NMs. Exhibit 9 to Defendant's SMF, pp. 175-176, 196-200, 204, 279-280, 287-290.

41.     On 2/19/15, after O'Haro told the patient she needed to give her medicine, the patient pulled up her gown, so O'Haro momentarily stopped. Exhibit 9 to Defendant's SMF, pp. 228, 229

42.     At no point did O'Haro tell the patient she would administer the medicine in her abdomen. O'Haro Exhibit 9 to Defendant's SMF, pp. 157-162.

43.     Students are not permitted to perform every task a licensed RN can perform. Exhibit 18 to Defendant's SMF, Request #5.

44.     According to LaRue, a student's theory grade trumped all. Exhibit "H" to Plaintiff's Brief in Opposition at p.3.

Respectfully submitted,

AUSTIN LAW FIRM LLC


By:   _____
      Sara A. Austin, Esquire
      Supreme Court I.D. No. 59052
      226 East Market Street
      York, PA  17403
      (717) 846-2246
      Counsel for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 8, 2019 a true and correct copy of the foregoing pleading filed in the above-captioned matter was or will be served electronically on the following:

David Freedman, Esq.
    Counsel for the Agency
    dfreedman@barley.com

_____
Sara A. Austin, Esquire