IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| SILVIA M. O'HARO, | : |
| | : |
| Plaintiff | : CIVIL ACTION NO 1:18-CV-2073 |
| v. | : |
| | : Honorable Jennifer P. Wilson |
| HARRISBURG AREA COMMUNITY COLLEGE | : |
| | : |
| | : |
| Defendant | : |

_____

**DEFENDANT HARRISBURG AREA COMMUNITY COLLEGE'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

BARLEY SNYDER, LLP

David J. Freedman, Esq. (Pa. Bar No. 207257)
dfreedman@barley.com
Kareemah Mayer, Esq. (Pa. Bar No. 326031)
kmayer@barley.com
Barley Snyder, LLP
126 East King Street
Lancaster, PA 17602-2893
Tel:  (717) 299-5201
Fax: (717) 291-4660
*Attorneys for Defendant Harrisburg Area Community College*

# **TABLE OF CONTENTS**

I.   At a minimum, the Court must strike O'Haro's back pay claim......................2

II.  O'Haro concedes that HACC did not retaliate against her. ...........................4

III. Professor Molnar played no role in the failing grades O'Haro received. .......5

IV.  O'Haro has not demonstrated that she could have successfully appealed her failing grade in Nursing 206. ........................................................................6

V.   HACC did not treat L.F. differently than O'Haro. .........................................8

VI.  HACC appropriately issued O'Haro an "F" in Nursing 250.........................11

VII. Conclusion ...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bakare v. Pinnacle Health Hosp., Inc.*,
    469 F. Supp.2d 272 (M.D. Pa. 2006) ............................................................. 2, 4

*Longstreet v. Holy Spirit Hosp.*,
    67 Fed. Appx. 123 (3d Cir. 2003) .................................................................. 12

*Regents of Univ. of Michigan v. Ewing*,
    474 U.S. 214 (1985) ......................................................................................... 9

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
_____

| | |
|---|---|
| SILVIA M. O'HARO, | : |
| | : |
|       Plaintiff | : CIVIL ACTION NO 1:18-CV-2073 |
| v. | : |
| | : Honorable Jennifer P. Wilson |
| HARRISBURG AREA COMMUNITY COLLEGE | : |
| | : |
| | : |
|       Defendant | : |

_____

**DEFENDANT HARRISBURG AREA COMMUNITY COLLEGE'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

In its moving brief, Defendant Harrisburg Area Community College ("HACC") demonstrated that it is entitled to summary judgment on Plaintiff Silvia O'Haro's claims of race and national original discrimination. HACC removed O'Haro from its Nursing Program after she failed two courses, as required by the program's rules. Although O'Haro has filed a brief opposing HACC's motion, her opposition fails to demonstrate that a genuine dispute of material fact should preclude the entry of summary judgment in HACC's favor. Most of O'Haro's brief is dedicated to addressing issues that HACC already debunked in its moving papers. HACC will not repeat those arguments here. As explained below, O'Haro's other arguments do not change the outcome. HACC is entitled to summary judgment on all claims.

## I.   At a minimum, the Court must strike O'Haro's back pay claim.

O'Haro's claim for back pay is entirely speculative, as HACC pointed out in its moving brief. Even if O'Haro had passed Nursing 250, she still would have had to complete a number of additional steps in order to obtain employment as a registered nurse, which she hasn't done during the intervening five years.[1]

O'Haro doesn't contest any of this.[2] In fact, her opposition brief doesn't even address HACC's request to strike the claim for lost wages. Thus, O'Haro has conceded that her damages claim should be stricken as speculative. *See Bakare v. Pinnacle Health Hosp., Inc.*, 469 F. Supp.2d 272, 291 n.36 (M.D. Pa. 2006) (granting summary judgment because the plaintiff failed to oppose the defendant's motion regarding defamation claim).

Alternatively, O'Haro has failed to mitigate her damages appropriately. Specifically, O'Haro could have—upon failing out of the Registered Nurse program—applied for admission to HACC's Practical Nurse certificate program, with advanced standing for the courses she had already completed while in the Registered Nurse program. Had she completed the Practical Nurse program, O'Haro could have applied for re-admission to the Registered Nurse program,

---

[1] (*See* HACC's Brief in Sup. Sum. J. (Doc. 43) at pp. 43-45).
[2] (*Compare* HACC's Statement of Undisputed Facts (Doc. 31) at ¶¶ 3-4, 190, and 192-202 *with* O'Haro's Response (Doc. 38) (providing no response to ¶¶ 3-4, 190, and 192-202) *see also* M.D. Pa. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party.")).

again with advanced standing for courses she had already completed. O'Haro did not pursue this option. These facts are undisputed.[3]

O'Haro, however, argues that she thought it might be too expensive to pursue re-enrollment through HACC's Practical Nurse certification program.[4] O'Haro, though, continued her education after she was removed from the Nursing program, ultimately obtaining an associate degree from Hagerstown Community College, albeit in Psychology, not Nursing.[5] Just this past summer, O'Haro enrolled in a bachelor degree program at Shippensburg University.[6]

Given her participation in those academic programs, O'Haro cannot claim that she lacked the funds to pursue her associate degree in Nursing by applying for HACC's Practical Nurse certificate program. O'Haro would have only had to complete one semester in the Practical Nurse program and, if she were successful, just one additional semester in the Registered Nurse program.[7] That would likely have been much less expensive than the five courses O'Haro took to obtain her

---

[3] (*Compare* HACC's Statement of Undisputed Facts (Doc. 31), at ¶¶ 16-17 *with* Plaintiff's Response to HACC's Statement (Doc. 38) (providing no responses to ¶¶ 16-17)).

[4] (*See* Plaintiff's Brief in Opposition to HACC's Summary Judgement Motion (Doc. 37), at pp. 13-14, ¶ 73 ("Likewise, O'Haro could not afford to enroll in the Defendant's LPN program as an alternative route to receiving an RN degree because she would then have the added financial burden of completing the RN program after the LPN program.")).

[5] (*See* Deposition of Silvia O'Haro (Doc. 31-10) at 54:20 to 56:5).

[6] (*See id.* at 56:23 to 57:12).

[7] (*See* Deposition of Caren La Rue (Doc. 31-4) at 184:9 to 187:11).

associate degree and the two additional courses she enrolled in at Shippensburg University during the Fall of 2019.[8] At the very least, O'Haro hasn't proved that entering the Practical Nursing certificate program would have been more expensive than what she actually did.

Ultimately, O'Haro either has conceded that it would be entirely speculative to award her damages or it is beyond dispute that O'Haro failed to mitigate her damages by pursuing her Nursing degree through HACC's Practical Nursing certification program. Either way, O'Haro's claim for damages must be stricken.

## II.   O'Haro concedes that HACC did not retaliate against her.

In its moving brief, HACC pointed out that O'Haro has not adduced any evidence from which a reasonable fact finder could determine that the College removed O'Haro from the Nursing program in retaliation for her lodging discrimination allegations.[9] O'Haro offers nothing to contradict HACC's argument. Thus, O'Haro has also conceded that she cannot prove that HACC retaliated against her, and HACC is entitled to summary judgment regarding that allegation. *See Bakare*, 469 F. Supp.2d at 291 n.36.

---

[8] (*See* Hagerstown Community College Transcript, attached as Exhibit A, at Summer 2015 (Math 101), Fall 2018 (Art 101 and Anthropology 201), and Spring 2019 (Economics 201 and Psychology 208); *see also* Shippensburg University Transcript, attached as Exhibit B, at Fall 2019 (Psychology 235 and Psychology 325)).

[9] (*See* HACC's Brief in Sup. Sum. J. (Doc. 30) at Part VI.C).

4

### III. Professor Molnar played no role in the failing grades O'Haro received.

O'Haro also claims that Professor Arletta Molnar subjected her to discriminatory treatment and, therefore, the Court should deny HACC's motion for summary judgment. Although O'Haro admits that Professor Molnar never used a racial epithet or otherwise explicitly referenced her race,[10] O'Haro takes issue with the tone that she claims Professor Molnar used with her.[11]

Regardless, Professor Molnar played no role in the failing grades that O'Haro received. Professor Molnar served as a clinical instructor during Nursing 206. O'Haro, however, failed the theory portion of Nursing 206, not the clinical portion.[12] Although O'Haro failed the clinical portion of Nursing 250 during the Spring 2015 semester, Professor Molnar wasn't an instructor for Nursing 250 that semester.[13]

Accordingly, whatever happened between O'Haro and Professor Molnar, that situation does not preclude the entry of summary judgment in HACC's favor.

---

[10] (*See* O'Haro Depo. (Doc. 31-10) at 296:7 to 297:9).
[11] (*See id.* at 66:18 to 68:7).
[12] (*See id.* at 80:16 to 81:7).
[13] (*See id.* at 286:16 to 287: 1 (admitting that allegations regarding Molnar "wouldn't have anything to do with what happened in the spring of 2015"); *see also* Nursing 250 Syllabus (Doc. 31-25) at D000971 (listing Caren LaRue, Kara Lindstrom, and Connie Miller as the instructors for Nursing 250 during the Spring 2015 semester)).

## IV. O'Haro has not demonstrated that she could have successfully appealed her failing grade in Nursing 206.

O'Haro claims that Professors Jill Lott and Caren LaRue interfered with her ability to lodge a grade appeal in Nursing 206 when O'Haro failed the theory portion of that course during the Fall 2014 semester. According to O'Haro, Lott and LaRue permitted her to review her final examination, but they refused to permit her to review the earlier examinations in the course. This—O'Haro contends—prevented her from lodging a grade appeal. Lott and LaRue dispute this.[14]

But this dispute does not involve a material issue. O'Haro has not provided any evidence suggesting that such an appeal would have been successful. O'Haro had failed the theory portion of Nursing 206 by at least 8.5 points.[15] O'Haro has provided no evidence that if she had appealed she would have received the additional 8.5 points she needed to pass Nursing 206.[16] Moreover, such an appeal would have been unprecedented. The maximum number of points that a student

---

[14] (*See* Deposition of Jill Lott (Doc. 31-16) at 95:20 to 97:20; LaRue Depo. (Doc. 31-4) at 141:1 to 142:11).
[15] (*Compare* HACC's Statement of Undisputed Facts (Doc. 31) at ¶ 49 *with* Plaintiff's Response (Doc. 38) (providing no response to paragraph 49).
[16] (*See* O'Haro Depo. (Doc. 31-10) at 130:9 to 131:3 ("Q: All right. Are you aware of any student who has been able to successfully convince the faculty, either directly with the nursing faculty or a grade appeal, to add at least 8.5 points to an exam? . . . A: No.")).

had ever received through a grade appeal was 5.5 points.[17] Thus, there is no reason to believe that she could have successfully appealed the failing grade she received in Nursing 206.

Additionally, the demographics regarding the students who failed Nursing 206 during the Fall 2014 semester makes clear that race played no role in whether a student successfully appealed a failing grade. Five total students originally failed the theory portion of Nursing 206: "R.W.," "L.F.," "E.P.," "M.B.M.," and O'Haro.[18]

Like O'Haro, L.F. and E.P.—both Caucasian—fell well short of passing. L.F. failed by six points, E.P. by 12 points. Neither of these Caucasian students lodged grade appeals. R.W. fell just three points short of passing, M.B.M. 5.5 points short.[19] Both R.W. (Caucasian) and M.B.M. (Latina) successfully appealed their failing grades.

That M.B.M. and R.W. filed successful appeals does not suggest that O'Haro failed Nursing 206 because she is African-American or Jamaican national origin. M.B.M. and R.W. weren't similarly situated to O'Haro. Their grades were significantly closer to passing than O'Haro's grades.

---

[17] (*See also* Second Affidavit of Caren LaRue, attached as Exhibit C, at ¶ 11).
[18] (*See id.* at ¶¶ 4-6).
[19] (*See id.* at ¶¶ 7-10).

Consequently, O'Haro's complaints about the appeal process are irrelevant. Whatever discussions occurred between O'Haro, Lott, and LaRue about the grade appeal process, those discussions did not prevent O'Haro from passing Nursing 206. O'Haro failed the theory portion of that course by more points than HACC had ever overturned through a grade appeal. Accordingly, O'Haro's contested allegations regarding those discussions do not suggest that she could have passed Nursing 206, much less that her race played a role in the failing grade she received in that course.

## V. HACC did not treat L.F. differently than O'Haro.

In its moving brief, HACC demonstrated that O'Haro cannot establish a *prima facie* case of academic discrimination because she was not qualified to remain in the program after she failed Nursing 206 during the Fall of 2014 and Nursing 250 during the Spring 2015 semester. After all, the program's rules required the removal of any student who failed two courses, as O'Haro had.[20]

---

[20] In passing, O'Haro claims that the Nursing Program Handbook speaks only to re-admission to the program, not whether a student must be removed from the program. That is a distinction without a difference. After all, the Handbook states that any student who "fails, withdraws or is withdrawn from" Nursing 206 must re-apply by "personally submit[ting] a completed Request for Readmission Form. . . ." (Doc. 31-6 at Bates D000046). Likewise, a "student with two failures or withdraws from the same nursing program will not be eligible for readmission to that program." (*Id.* (emphasis in original)). This language makes clear that any student who fails Nursing 206 must apply for readmission to the Nursing program, but that failing two courses means such a student cannot be directly re-admitted to the associate degree program. If there were any doubt about that, Professor LaRue

8

Additionally, the concerns that Professors LaRue and Lindstrom had raised regarding O'Haro's clinical performance reflected "genuinely academic decision[s]," which—in accordance with U.S. Supreme Court precedence—are entitled to "great respect for the faculty's professional judgment." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). As a result, such decisions cannot be overridden unless the student has demonstrated that the faculty members' concerns reflect "such a departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually demonstrate professional judgment." *Id.*

Rather than addressing that issue, O'Haro claims that the faculty treated her differently than "L.F.," a Caucasian student.[21] According to O'Haro, L.F. made an

---

dispelled that during her deposition. (*See* LaRue Depo. (Doc. 31-4) at 201:2-9 ("Under the old curriculum, if a student failed two courses over the period the student was in the program, what would happen to that student? A: Two independent courses? Q: Yes. A: They would be dismissed from the program.")). O'Haro has provided nothing to rebut this evidence. (*See* O'Haro's Response to HACC's Statement of Undisputed Facts (Doc. 38) at ¶ 15 (providing no evidentiary citation to support denial)).

[21] O'Haro also claims that she was treated differently than "K.E.," another Caucasian student who practiced remediating a noted clinical error in the Nursing laboratory. But as discussed in HACC's moving papers, K.E. was not similarly situated to O'Haro. K.E. committed a different error than O'Haro, her error occurred during a different course, and a different professor assigned her to practice the skill in the laboratory. (*Compare* HACC's Statement of Undisputed Facts (Doc. 31) at ¶¶ 204-207 *with* O'Haro's Response to Statement of Undisputed Facts (providing no response to ¶¶ 204-207)). Additionally, K.E. ended up demonstrating the skill in question in the clinical setting after demonstrating the required level of proficiency in the Nursing laboratory. (*See* Deposition of K.E.

9

error during her last clinical placement in Nursing 206 during the Fall 2014 semester. Although L.F. failed Nursing 206, HACC permitted L.F. to return to the program for the Spring 2015 semester. Thus—O'Haro argues—HACC should have permitted O'Haro to continue with the Nursing program after she committed errors on the last day of clinical in Nursing 250 during the Spring 2015 semester.

This argument is misleading. O'Haro was in a completely different situation after she failed Nursing 250 from the situation that L.F. faced at the conclusion of Nursing 206 in the Fall of 2014. When O'Haro failed Nursing 250, that marked the second time she had failed a Nursing program course.[22] In contrast, HACC permitted L.F. to return to the program for the Spring 2015 semester because she had only failed one program course by that point.[23] In this respect, HACC treated O'Haro exactly like L.F. Both O'Haro and L.F. failed the theory portion of Nursing 206 during the Fall 2014 semester, and both students were permitted to return for the Spring 2015 semester.

---

(Doc. 31-39) at 20:2-5 ("Q: Did you ever execute another two-patient medication pass during your clinical placements after October 1, 2014? A: Yes.")).

[22] (*See* O'Haro's Academic Transcript (Doc. 31-9) at HACC000018 (noting a D in Nursing 206 during the Fall 2014 semester and an F in Nursing 250 during the Spring 2015 semester)).

[23] (*See* L.F.'s Academic Transcript (Doc. 31-43) at R000307-308 (indicating that L.F. received an A, B, or C grade in all Nursing courses, except for Nursing 206 during the Fall 2014 semester)); *see also* Associate Degree Graduation Requirements (Doc. 31-3) ("Nursing courses must be completed with a 'C' or better to progress through the nursing program.")).

Thus, HACC's decision to permit L.F. to return to the program for the Spring 2015 semester does not suggest that HACC discriminated against O'Haro by removing her from the program after she failed a second Nursing course.

## VI. HACC appropriately issued O'Haro an "F" in Nursing 250.

O'Haro also challenges the "F" grade that she received in Nursing 250. O'Haro claims that the Nursing 250 course syllabus required that she receive a "D" grade when she failed to satisfy the clinical requirements in that course. According to O'Haro, had she received a "D" grade for Nursing 250 and been allowed to finish Nursing 251 and Nursing 243, her grade point average might have been high enough to allow her to graduate from the program.

That is wrong. As an initial matter, the course syllabus did not require that O'Haro receive a "D" grade in Nursing 250. The language at issue in the Nursing 250 syllabus states the following: "A NOT MET on any skill at the end of the course and on any learning outcome in the clinical performance evaluation toolkit will result in a 'D' grade for the course, regardless of the theory grade."[24]

This language doesn't mean that a student *automatically* must receive a passing grade if the student obtains a "Not Met" evaluation for any clinical criteria. A "D" is a failing grade in HACC's Nursing program.[25] The syllabus's language

---

[24] (Nursing 250 Syllabus (Doc. 31-25) at D000975).
[25] (*See* Associate Degree Nursing Program Requirements (Doc. 31-3) ("Nursing courses must be completed with a 'C' or better to progress through the nursing

11

just means that a student must obtain "Met" evaluations on all clinical evaluations in order to receive a passing grade in the course. The student cannot make up for a "Not Met" evaluation by obtaining a sufficiently high grade in Nursing 250's theory component.

In other words, a student will receive a *maximum* grade of a "D"—which is a failing grade—if she has a "Not Met" clinical evaluation at the course's conclusion.[26] To the extent there is any ambiguity, HACC's interpretation of what that language means is entitled to deference. *See, e.g., Longstreet v. Holy Spirit Hosp.*, 67 Fed. Appx. 123, 126 (3d Cir. 2003) ("In the face of such ambiguity a level of deference should be given to those doing the hiring.").

Even if the syllabus could be read to mean what O'Haro claims, her receipt of an "F" grade does not suggest that HACC discriminated against her. O'Haro received an "F" in Nursing 250 because she did not take that course's final examination. Instead, HACC faculty removed O'Haro from the program before Nursing 250's final exam because O'Haro had failed to satisfy Nursing 250's clinical requirements, even after being provided one last opportunity to do so with

---

program."); Associate Degree Academic Progression (Doc. 31-5) ("A theory grade of 'C' (75%) or above in nursing courses, and an 'M" (met) in the clinical component must be earned in order to progress to the next nursing course, *and to graduate from the Nursing Program.*") (emphasis added)).
[26] (*See* LaRue Aff., Ex. C, at ¶¶ 12-16).

Professor Kara Lindstrom.[27] As a result, O'Haro couldn't pass that course and, therefore, there was no need for her to take Nursing 250's final examination. Similarly, HACC faculty did not permit O'Haro to continue with Nursing 243 and Nursing 251 because O'Haro couldn't graduate from HACC's associate degree program without passing Nursing 250.[28] O'Haro has adduced no evidence of any student in a similar situation who was treated differently than her in this regard.

Moreover, the difference between a "D" and an "F" made no difference to O'Haro. Again, a "D" and an "F" are both failing grades in the Nursing program. Whether a student received a "D" or an "F" would only make a difference if a student might return to the Nursing program. Students must maintain an overall grade point average of 2.0 to continue in the program.[29] So if a student had only failed one course so far, whether the student received a "D" as opposed to an "F" might affect whether the student's overall grade point average was high enough to continue in the program.

That, however, wasn't O'Haro's situation. O'Haro had already failed Nursing 206 during the Fall 2014 semester. Plus, she had failed to obtain "Met" evaluations for all clinical criteria in Nursing 250, which meant she would fail that

---

[27] (*Compare* HACC's Statement of Undisputed Facts (Doc. 31) at ¶¶ 179-180 *with* Plaintiff's Response to HACC's Statement of Undisputed Facts (Doc. 38) (providing no response to ¶¶ 179-180)).
[28] (*See* Second LaRue Aff., Ex. C, at ¶¶ 17-21).
[29] (*See* Associate Degree Academic Progression (Doc. 31-5) ("The student must maintain an overall GPA of 2.0 in order to continue in the program.")).

course as well. Because that marked the second course she had failed in the program, O'Haro would not be permitted return to the associate degree program directly, regardless of whether her failing grade in Nursing 250 appeared on her transcript as a "D" or an "F."[30]

Most importantly, O'Haro cites no evidence to support her claim that she could have graduated from HACC's associate degree program without passing Nursing 250. To the contrary, the Program Handbook lists Nursing 250 as a course that students must pass to obtain an associate degree in Nursing from HACC.[31] O'Haro had failed Nursing 250 because she didn't satisfy all clinical criteria in that course.[32] That marked the second course she had failed in the program, which required her removal from the associate degree program. There is no genuine dispute about any of this.[33]

---

[30] (*See* Doc. 31-6 at D000046 ("A student with two failures . . . will not be eligible for readmission to that program.") (emphasis in original)).

[31] (*See* Associate Degree Nursing Program Graduation Requirements (Doc. 31-3) (listing "Nursing 250" as a required course); *see also* Second LaRue Aff., Ex. B, at ¶ 17).

[32] (*Compare* HACC's Statement of Undisputed Facts (Doc. 31) at ¶¶ 97, 115, and 178-180 *with* O'Haro's Response to HACC's Statement of Undisputed Facts (Doc. 38) (providing no response to ¶¶ 97, 115, and 178-180)).

[33] (*See* HACC's Readmission Procedure (Doc. 31-36) at D000046 ("A student with two failures . . . from the same nursing program will not be eligible for readmission to that program.") (emphasis in original); *see also* LaRue Depo. (Doc. 31-4) at 201:2-8 ("Under the old curriculum, if a student failed two courses over the period the student was in the nursing program, what would happen to that student? A: Two independent courses? Q: Yes. A: They would be dismissed from the program.") and 202:10-13 ("Q: Once Miss O'Haro had failed Nursing 250 during

**VII. Conclusion**

O'Haro has failed to demonstrate the existence of a genuine dispute of material fact requiring a trial in this matter. Accordingly, HACC requests that the Court enter an order granting summary judgment in its favor. Alternatively, HACC requests that the Court enter an order striking O'Haro's claim for back pay.

Respectfully Submitted,

BARLEY SNYDER, LLP

*/s/ David J. Freedman*
David J. Freedman, Esq. (Pa. Bar No. 207257)
dfreedman@barley.com
Kareemah Mayer, Esq. (Pa. Bar No. 326031)
kmayer@barley.com
Barley Snyder, LLP
126 East King Street
Lancaster, PA 17602-2893
Tel:  (717) 299-5201
Fax: (717) 291-4660
*Attorneys for Defendant Harrisburg Area Community College*

---

the spring 2015 semester, how many nursing courses had Miss O'Haro failed? A: Two.")).

## WORD COUNT CERTIFICATION

I, David J. Freedman, hereby certify that the word count function for this document indicates that the document contains 3,705 words—not counting the cover sheet, table of contents, table of authorities, word count certification, and certificate of service.

        BARLEY SNYDER, LLP

        */s/ David J. Freedman*
        David J. Freedman, Esq. (Pa. Bar No. 207257)
        dfreedman@barley.com
        Kareemah Mayer, Esq. (Pa. Bar No. 326031)
        kmayer@barley.com
        Barley Snyder, LLP
        126 East King Street
        Lancaster, PA 17602-2893
        Tel:  (717) 299-5201
        Fax: (717) 291-4660
        *Attorneys for Defendant Harrisburg Area Community College*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that this 20th day of December, 2019, a true and correct copy of the foregoing, Defendant Harrisburg Area Community College's Reply Brief in Support of Its Motion for Summary Judgment, has been filed with the Court's CM/ECF system and is available for downloading:

Sara A. Austin, Esq.
Austin Law Firm LLC
226 E. Market St.
York, Pa 17403
(717) 846-2246
saustin@austinlawllc.com


BARLEY SNYDER, LLP

*/s/ David J. Freedman*
David J. Freedman, Esq. (Pa. Bar No. 207257)
dfreedman@barley.com
Kareemah Mayer, Esq. (Pa. Bar No. 326031)
kmayer@barley.com
Barley Snyder, LLP
126 East King Street
Lancaster, PA 17602-2893
Tel:  (717) 299-5201
Fax: (717) 291-4660
*Attorneys for Defendant Harrisburg Area Community College*